NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 08-10562-DHW
                                                         Chapter 13
JOE F. FOSTER,

    Debtor.

## MEMORANDUM OPINION

Sellers, Inc. filed an objection to confirmation of Joe F. Foster's ("Foster") chapter 13 plan. Therein, Sellers, Inc. alleges that the plan has not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3).

On August 6, 2008, an evidentiary hearing was held to consider the objection. At the hearing, Foster was represented by his attorney, Rafael Gil, III, and Sellers, Inc. was represented by its counsel, Grady A. Reeves.

Upon consideration of the facts of this case and the applicable law as set out herein, the court concludes that the objection should be overruled.

### Jurisdiction

The court's jurisdiction is derived from 28 U.S.C. § 1334 and from an order of the United States District Court for this district referring jurisdiction in title 11 matters to the Bankruptcy Court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Further because the dispute concerns the confirmation of a plan, this is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(L) thereby extending this court's jurisdiction to the entry of a final order or judgment.

### Findings of Fact

Foster is an independent contractor in the timber hauling business. For several years prior to his filing for bankruptcy relief, Foster hauled timber for

Sellers, Inc., a timber broker. At the time of the bankruptcy filing, Sellers, Inc. paid Foster 11 cents for each ton of wood hauled to market. The price reflected a previous raise predicated on an increase in fuel prices.

In late February 2008, the 1995 Freightliner that Foster used in his hauling business broke down, and as a result, Foster decided to get out of the business altogether. However, a few days later, in early March 2008, Foster changed his mind when William Sellers, president of Sellers, Inc., agreed to assist Foster by financing his purchase of a 1999 Kenworth 18-wheeler.

Foster purchased the 1999 Kenworth on March 7, 2008. In conjunction with that purchase, Foster signed a note payable to Sellers, Inc. in the amount of $21,000 (Pl.'s Ex. A-6) and gave Seller's, Inc. a security interest in the Kenworth (Pl.'s Exs. A-4 and A-5). Further, Foster executed an indemnity agreement (Pl.'s Ex. A-3) which provided in part:

> In the event Mr. Foster ceases to be a subcontractor/ producer/hauler for Sellers, Inc., for any reason, Mr. Foster will, within ten days of termination of said relationship, either (a) deliver possession of and title to the above-mentioned equipment, to Sellers, Inc., or (b) pay in full the then balance of **any debt** to Sellers, Inc. **Evidence of termination of this relationship shall include failure or unwillingness to haul products for Logging contractors affiliated with Sellers Inc., or hauling products for logging contractors not affiliated with Sellers Inc. Indemnitor agrees to haul exclusively for logging contractors affiliated with Sellers Inc. or pay off his entire indebtedness to Sellers Inc. on demand.**

Pl.'s Ex. A-3, ¶ 4 (emphasis in original).

For five weeks following the purchase of the Kenworth 18-wheeler, Foster hauled timber exclusively for Sellers, Inc., and for each of those five weeks, Sellers, Inc. withheld $240 from the amounts due to Foster in payment of the 18-wheeler note. *See* Pl.'s Ex. B.

During those weeks, fuel prices increased by 62 cents per gallon. This

2

increased Foster's costs by over $250 per week. As a result of this dramatic increase in fuel prices, Foster began losing money and even lost his health insurance in his effort to pay other bills.

In mid-April 2008, Foster, along with five other independent haulers for Sellers, Inc., met with William Sellers to request a pay increase from 11 to 13 cents per ton due to the rise in fuel costs. Sellers was unable to agree at that time to their request, but he promised to do what he could to provide for raises sometime in the future. Of the six drivers who met with Sellers to request a pay increase, four remained as exclusive haulers for Sellers, Inc., but Foster and another driver left.

Foster stopped hauling timber for Sellers, Inc. after the meeting with Sellers failed to result in a pay increase. He parked his truck and ceased operation of his business for the week prior to his filing bankruptcy on April 21, 2008. Following bankruptcy, Foster began hauling timber for competitors of Sellers Inc. but for a price per ton higher than the 11-cent rate paid by Sellers, Inc.

Foster's chapter 13 plan treats the claim of Sellers Inc. as fully secured and provides for payment of the claim together with interest at 6% per annum.[1]

## Conclusions of Law

This court must confirm Foster's plan if it finds that the plan complies with the requirements of 11 U.S.C. § 1325(a). Sellers, Inc. contends that Foster's plan fails to meet the "good faith" requirement of § 1325(a)(3). The section provides: "(a) Except as provided in subsection (b), the court shall confirm a plan if . . . (3) the plan has been proposed in good faith and not by any means forbidden by law."

---

[1] The evidence shows that in addition to the claim secured by the 1999 Kenworth, Foster owes Sellers, Inc. approximately $2,300 on a separate debt incurred in May 2007. *See* Pl.'s Ex.A-1. The purpose of this loan was to enable Foster to purchase a log trailer. This additional debt, however, was not made a part of this "good faith" objection.

3

11 U.S.C. § 1325(a)(3).

The Court of Appeals for this circuit considered the good faith requirement for confirmation of a chapter 13 plan in *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir. 1983). The court held that good faith, which defies comprehensive definition, is determined based on the totality of the circumstances in each case: has there "been an abuse of the provisions, purpose or spirit" of the relief provided by chapter 13? *Kitchens*, 702 F.2d at 888. The court went on to enumerate a non-exhaustive list of factors which a bankruptcy court must consider in determining whether the statutory requirement of good faith is met.[2] Only two of those factors are implicated here – whether this debt would be nondischargeable in a case under chapter 7 and Foster's "bona fides" in dealing with Sellers.

Sellers, Inc. contends it would not have agreed to finance the purchase of the 18-wheeler had Foster not agreed to be its exclusive hauler. Sellers, Inc. maintains that Foster's agreement to be an exclusive hauler was a fraudulent misrepresentation such that the debt would be nondischargable were this case one under chapter 7. The applicable provision of the Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from

---

[2] When considering whether a chapter 13 plan has been proposed in good faith, a bankruptcy court must consider the following factors: (1) amount of the debtor's income from all sources; (2) living expenses of debtor and his dependents; (3) amount of attorney fees; (4) probable or expected duration of debtor's chapter 13 plan; (5) motivations of debtor and his sincerity in seeking relief under the provisions of chapter 13; (6) debtor's degree of effort; (7) debtor's ability to earn and likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) frequency with which debtor has sought relief under Bankruptcy Reform Act and its predecessors; (10) circumstances under which the debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors; and (11) burden which plan's administration would place on trustee. In addition, the court may consider the type of the debts to be discharged and whether such debts would be nondischargeable under Chapter 7, and accuracy of plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court. *See Kitchens*, 702 F.2d at 888-89.

4

>    any debt— . . .
>       (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
>          (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

In order to prevail in an action under 11 U.S.C. § 523(a)(2), the creditor must prove the following elements: 1) that the debtor made a false representation to deceive the creditor; 2) that the creditor relied on the misrepresentation; 3) that the reliance was justified; and 4) that the creditor sustained a loss as a result of the misrepresentation. *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998); *Fuller v. Johannessen (In re Johannessen)*, 76 F.3d 347, 350 (11th Cir. 1996). Justifiable reliance, rather than the more stringent reasonable reliance or the more lenient actual reliance, is the standard in § 523(a)(2)(A) litigation. *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995); *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 281 (11th Cir. 1995).

When the false representation complained of relates to a promise to do or to refrain from doing something in the future, as opposed to a then-existing fact, the plaintiff's burden is to prove that the promisor did not intend to perform at the time the promise was made. Such species of fraud is referred to as promissory fraud. *Wade v. Chase Manhattan Mortgage Corporation*, 994 F. Supp. 1369, 1378 (N.D. Ala. 1997) (citing *Robinson v. Allstate Insurance Company*, 399 So. 2d 288 (Ala. 1981). "[T]he law places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future." *National Sec. Ins. Co. v. Donaldson*, 664 So. 2d 871, 876 (Ala. 1995). In such cases a plaintiff must prove that the debtor did not intend to perform or abstain and intended to deceive the plaintiff at the time the representation was made. *Crowne Investments, Inc. v. Bryant*, 638 So. 2d 873, 877 (Ala. 1994). If such were not the case, every promise to perform in the future, such as a promise to pay a debt at a later date, would constitute nondischargeable fraud if the promise was not fulfilled.

5

In the case a bar, considering the totality of the circumstances, the court concludes that Sellers, Inc. failed to prove that Foster did not intend to perform the exclusive hauler agreement at the time that he made the representation. Rather, the evidence shows that Foster's breach was the result of a supervening change in circumstances, namely escalating fuel prices, rather than any fraudulent intent. That conclusion is further evidenced by Foster's performance under the parties' agreement for the first five weeks until operating losses forced him to stop when his request for a pay increase was refused. It is clear to the court that Foster's breach of the exclusivity agreement was driven by economic necessity rather than any fraudulent motive.

Sellers, Inc. also contends that the circumstances under which the debtor contracted the debt demonstrate a lack of *bona fides* in dealing with Sellers, Inc. The term *bona fides* means "good faith." The term is further defined as "[t]he standard of conduct expected of a reasonable person, esp. in making contracts and similar actions; acting without fraudulent intent or malice." *Black's Law Dictionary* (8th ed. 2004).

The court disagrees that the circumstances indicate a lack of *bona fides*. At the time of this transaction and before, William Sellers and Foster had a good working relationship. The transaction itself is evidence of this good relationship. Sellers was aware of the fuel "crunch" at the time of the loan. In fact, Foster had requested and received a previous raise based on an increase in fuel prices. Foster continued to haul for Sellers as long as he was financially able. He breached the contract due to circumstances beyond his control. It follows that this court finds that the plan was filed in good faith.

## Conclusion

For these reasons, the objection to confirmation filed by Sellers, Inc. will be overruled. Pursuant to Fed. R. Bankr. Proc. 9021, separate orders will enter overruling the objection and confirming the plan.

Done this the 25th day of August, 2008.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

6

c: Debtor
   Rafael Gil, III., Debtor's Attorney
   Grady A. Reeves, Creditor's Attorney
   Curtis C. Reding, Trustee